UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WHAM-O HOLDING, LTD. AND INTERSPORT CORP. D/B/A WHAM-O, <br><br>Plaintiffs, <br><br>v. <br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A, <br><br>Defendants. | No. 24 CV 12523 <br><br>Judge Georgia N. Alexakis |

ORDER

For the reasons set forth below, the Court denies plaintiffs' renewed motion for a temporary restraining order. [24].

STATEMENT

On December 5, 2024, plaintiffs Wham-O Holding, Ltd. and Intersport Corp. d/b/a Wham-O (collectively, "Wham-O") filed suit against 98 defendant-storefronts, alleging violations of the Lanham Act and Illinois' Uniform Deceptive Trade Practices Act. [1], [3]. After the Court questioned the propriety of joining 98 defendant-storefronts in a single action involving four separate trademark registrations, [7], Wham-O amended its complaint to focus on only one trademark registration [13]. It also winnowed its list of defendant-storefronts to 61. *Id.*; *see also* [12].

On December 16, 2024, Wham-O filed an *ex parte* motion for a temporary restraining order. [17]. Wham-O sought the following forms of relief: a temporary injunction against the 61 defendant-storefronts enjoining the manufacture, importation, distribution, offering for sale, and sale of infringing and counterfeit products; a temporary asset restraint; and expedited discovery. *Id.* In the memorandum Wham-O filed in support of its *ex parte* motion, Wham-O represented that a temporary restraining order was "necessary to stop the ongoing harm to Wham-O" based on the defendant-storefronts' alleged infringement of the pertinent trademark. [18] at 10. It further submitted an affidavit from Kurt Rios, president of InterSport Corporation, to support its argument that the Court was justified in

awarding Wham-O equitable relief because, in Rios' words, "[m]onetary damages alone cannot adequately compensate Wham-O for ongoing infringement." [18-1] ¶ 22. *See also* [18] at 10 (Wham-O argued that it will suffer "immediate and irreparable injury, loss, or damage" without injunctive relief); *id.* at 11–12 ("Plaintiff has shown … an immediate and irreparable harm suffered as a result of Defendant's activities.").

On December 19, 2024, the Court held a hearing on Wham-O's *ex parte* motion for a temporary restraining order. [22]. During the hearing, the Court raised concerns about the lack of evidence Wham-O had presented to support its assertions that it was experiencing "ongoing" and "immediate" harm owing to the defendant-storefronts' alleged infringement. Such evidence was critical in light of Rule 65(b)(1)(A)'s requirement that a court "issue a temporary restraining order without written or oral notice to the adverse party or its attorney *only if* … specific facts in an affidavit or a verified complaint clearly show that *immediate* and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b) (emphases added). Although Wham-O's memorandum and Rios' affidavit satisfied this requirement on their face, the Court noted that, along with its motion, Wham-O had submitted documents showing only that the defendant-storefronts had offered for sale the allegedly infringing products in June, July, and September 2024—several months before filing the motion for a temporary restraining order. *See generally* [14-2]. Ultimately, the Court granted Wham-O's request for expedited discovery, but otherwise denied the *ex parte* motion for a temporary restraining order, without prejudice to renewal, given the lack of evidence presented that any alleged infringing activity was ongoing, "contrary to the representations plaintiff made in support of its motion." [22].

Two weeks later, on January 6, 2025, Wham-O filed a renewed *ex parte* motion for a temporary restraining order. [24]. This time, Wham-O sought injunctive relief against only five defendant-storefronts because it lacked evidence that the remaining 56 defendant-storefronts continued to engage in infringing activity. *Id.* at 2. On this second go-around, a different problem came into focus.

At a January 13, 2025, hearing on Wham-O's renewed motion, the Court expressed concern that Wham-O's request for a temporary asset restraint was overbroad. [29]. In a proposed order that Wham-O had submitted in advance of the hearing, Wham-O asked the Court to restrain "any money or other of Defendants' assets in any of Defendants' financial accounts" and to order third parties to "locate all accounts and funds connected to Defendants' seller aliases" and, having done so, for those third parties to "restrain and enjoin any such accounts or funds from transferring or disposing of any money or other of Defendants' assets." *Id.* As the Court explained at the hearing, this request for relief struck it as overbroad where the evidence Wham-O had submitted to the Court showed that the defendant-storefronts sold dozens of products other than the allegedly infringing product at issue. *Id.* As a result, the financial accounts Wham-O sought to freeze very likely

2

included proceeds from sales that had nothing to do with this matter—and, as the Court had to presume, were the product of lawful commercial activity. *Id.*

In the Court's view, such over-restraint was problematic because Wham-O's asserted legal justification for seeking the prejudgment restraint of assets was the fact that it sought disgorgement of profits (an equitable form of relief) as an ultimate remedy. [11] at 11 (Wham-O's amended complaint requests that "Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged"); [18] at 11 (Wham-O argues that "[c]ourts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity"); *see also Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 331 (1999) (explaining that courts lack the power to issue an asset freeze at the beginning of a case, unless that party is seeking equitable relief). At the hearing, the Court's question to Wham-O boiled down to this: If Wham-O's ultimate objective is to recover profits from the sales of infringing products, what legal authority allows the Court to restrain assets that it knows from the outset—based on evidence Wham-O itself has put in the record—will encompass more than proceeds from those sales?

In response to the Court's concerns, Wham-O did not dispute that the defendant-storefronts sold dozens, if not hundreds, of products that did not infringe on the trademark registration at issue. It did not dispute the Court's understanding of the scope of relief it sought—namely, restraint of "*any* money or other of Defendants' assets in *any* of Defendants' financial accounts," [29], regardless of whether that money, those assets, or those accounts were linked to sales of non-infringing products. Counsel for Wham-O also heard the Court's suggestion that Wham-O tailor its requested form of relief and seek restraint of only those assets that could be traced to the sale of infringing products.[1]

Ultimately, however, counsel for Wham-O did not submit a modified order seeking a more limited temporary asset restraint as part of the overall injunctive relief it sought. Instead, Wham-O submitted a supplemental notice of authority in support of its request for a blanket asset freeze. [28]. Having considered Wham-O's supplemental notice of authority, the Court now denies Wham-O's motion for a temporary restraining order where Wham-O's request for relief asks the Court to impose a restraint of assets that Wham-O does not dispute would capture more than sales from the allegedly infringing products.

As noted above, district courts lack the power to issue a prejudgment asset

---

[1] The Court has made the same suggestion to plaintiffs in other Schedule A matters where it has expressed similar concerns about the scope of the proposed asset restraint. In most, if not all, of those other instances, plaintiffs have modified the scope of their proposed asset restraint accordingly to limit the asset restraint to money or assets that derive from the sale of allegedly infringing products.

restraint at the outset of a case unless plaintiff is seeking equitable relief. *See Grupo Mexicano*, 527 U.S. at 324–25, 333; *see also Deckert v. Independence Shares Corp.*, 311 U.S. 282, 289 (1940) (approving preliminary restraint where rescission and restitution were sought). A court cannot impose an asset restraint "simply to establish a fund from which a later award of money damages can be satisfied." *See Banister v. Firestone*, No. 17 C 8940, 2018 WL 4224444, at *9 (N.D. Ill. Sept. 5, 2018); *see also Jergenson v. Inhale Int'l Ltd.*, No. 22 CV 2040, 2023 WL 167413, at *5 (N.D. Ill. Jan. 12, 2023) ("[A] prejudgment asset restraint is an extraordinary measure that is appropriate when an equitable remedy of an accounting would be jeopardized without a restraint; it is not a device to be employed simply to secure a pot of money for later recovery of damages.").

"Disgorgement is an equitable remedy to be imposed by the Court" and "is an appropriate remedy where the defendant actually holds property or proceeds that belong to the plaintiff which can be returned to the plaintiff." *See Cont'l Vineyard LLC v. Dzierzawski*, No. 12 C 3375, 2018 WL 11195945, at *1 (N.D. Ill. Apr. 5, 2018). It is a form of relief that requires a degree of specificity from the plaintiff. He must identify the particular property or proceeds he seeks to recover. As the Supreme Court explained in *Great-West Life & Annuity Insurance Co. v. Knudson*: "[F]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff *particular* funds or property in the defendant's possession." 534 U.S. 204, 214–15 (2002) (emphasis added); *id.* at 215 (describing "a claim to *specific* property (or its proceeds)" that can sustain an action for restitution or disgorgement as equitable forms of relief) (emphasis added). *See also Mooney v. Ill. Educ. Ass'n*, 942 F.3d 368, 371 (7th Cir. 2019) ("[R]estitution in equity typically involved enforcement of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.") (cleaned up); *Placht on behalf of Symbria Inc. Emp. Stock Ownership Plan v. Argent Tr. Co.*, No. 21 C 5783, 2022 WL 3226809, at *14 (N.D. Ill. Aug. 10, 2022) ("Courts have held that equitable restitution (including its disgorgement variant) generally requires specifically identifiable property or its traceable proceeds and dismissed claims purporting to seek appropriate equitable relief when plaintiffs did not identify such property or proceeds.") (collecting cases) (cleaned up).

Even in the typical disgorgement scenario, courts are not obligated to impose a prejudgment asset restraint. The decision to do so is discretionary. *See Roadget Bus. Pte. Ltd. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A Hereto*, 735 F. Supp. 3d 981, 983 (N.D. Ill. 2024) ("[W]here … a plaintiff seeks an equitable remedy like disgorgement, an asset freeze *may* be appropriate.") (emphasis added); *Banister*, 2018 WL 4224444, at *9 ("[T]he Court can *permissibly* freeze assets to protect a plaintiff's equitable remedies.") (emphasis added); *see also CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("Since the assets in question here were profits the

Redisis made by unlawfully stealing Cablevision's services, the freeze was appropriate and *may* remain in place pending final disposition of the case.") (emphasis added); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 708 (5th Cir. 2007) ("Where a legal action is inadequate and an asset freeze is narrowly drawn to sequester only those funds necessary to satisfy the potential judgment, it is well settled that the granting of a temporary injunction is within the sound discretion of the trial court.") (citing *Deckert*, 311 U.S. at 290) (cleaned up).

Here, the Court declines to exercise its discretion in the broad manner Wham-O requests. Wham-O has presented the Court with evidence that the five defendant-storefronts at issue sell dozens, if not hundreds, of products that are not implicated in this matter. The Court has no reason to believe the sales of those products represent anything other than lawful commercial activity. On this record, the Court will not impose a prejudgment asset restraint that knowingly encompasses those legitimate assets. To do so would be to relieve Wham-O of its burden to identify the property or proceeds it seeks to enjoin with a sufficient degree of specificity. And it would risk creating a pot of money that would be far too plentiful to accomplish Wham-O's stated, narrow objective (the disgorgement of ill-gotten gains), all the while impeding legitimate business transactions.

The Court does not stand alone in declining to impose a blanket asset freeze. Other courts in this District have taken measured approaches when imposing asset restraints in the multitude of "Schedule A cases" (as such matters are colloquially referred) filed in Chicago. Courts outside this District have done the same, with some refusing to impose any kind of freeze when presented with overbroad requests. *See, e.g.*, *Wang v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 8:23-CV-2787-VMC-AAS, 2024 WL 3402460, at *3 (M.D. Fla. June 25, 2024), *report and recommendation adopted sub nom. Wang v. Partnerships & Unincorporated Associations Identified on Schedule A & Jin LV*, No. 8:23-CV-2787-VMC-AAS, 2024 WL 3520866 (M.D. Fla. July 24, 2024) (denying preliminary injunction because "even if *some* potential for irreparable harm existed, the requested asset restraint is extremely overbroad"); *AFG Media Ltd. v. Poptrend-Off.*, No. 2:23-CV-1840, 2023 WL 9023415, at *8 (W.D. Pa. Dec. 29, 2023) (holding "that the blanket asset freeze currently in place goes further than permitted and beyond the close nexus [with the Court's exercise of equitable powers] required" by *Grupo Mexicano* and, as a result, "that all funds allegedly arising from the sale of the allegedly infringing Costumes shall be frozen—but no more"); *Tang v. Individuals, etc.*, No. 21-14431-CIV, 2022 WL 1664116, at *3 (S.D. Fla. Feb. 28, 2022) ("In light of the extreme breadth and severity of the proposed asset freeze—combined with the speculative and generalized nature of the showing of alleged irreparable injury—Plaintiff has not met its burden to warrant that aspect of the relief sought.").

The Court recognizes that one approach it could take here would be to give Wham-O the relief it seeks and then wait for defendant-storefronts to appear and

5

move to modify the scope of the asset restraint. As at least one court in this District has written, "if the amount of the profits is known, then the asset freeze should apply only to that specific amount, and no more." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013). Arguably then, where the amount of profits is not known, the Court could freeze everything and shift the burden to defendants "to present documentary proof that particular assets are not the proceeds of counterfeiting activities." *See Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) (quoting *Luxottica USA LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 14 C 9061, 2015 WL 3818622, at *5 (N.D. Ill. June 18, 2015)). But even cases using this burden-shifting approach have recognized that "the appropriate scope of prejudgment restraint must be limited only to what is *reasonably necessary* to secure the (future) equitable relief." *Deckers*, No. 13 C 07621, 2013 WL 12314399, at *2 (emphasis added). In this Court's view, it is not reasonable to freeze any and all of defendant-storefronts' assets when the Court and Wham-O already know that only a fraction of those assets derive from sales of allegedly infringing products.

Furthermore, it is not reasonable to freeze any and all of defendant-storefronts' assets—on the theory that the amount of their profits is unknown—when, as far as the Court knows, Wham-O has made no effort to calculate those profits. As part of these proceedings, the Court earlier granted Wham-O leave to obtain expedited discovery from third-party online marketplace platforms, which included information about defendant-storefronts' "associated sales," "financial information," and "sales and listing history." [27] at 3–4; [22]. Some calculation of profits should be feasible from this information. This calculation, in turn, would permit the Court to impose an asset restraint that is more tethered to Wham-O's stated purpose: to permit the eventual disgorgement of profits. If the third parties have stonewalled Wham-O, Wham-O should seek appropriate relief from the Court. But Wham-O should not be able to justify a blanket freeze on defendants' assets by claiming that the amount of their profits is unknown before making some effort to calculate that figure.

Wham-O's supplemental authority does not compel a contrary conclusion. [28-1] (attaching a copy of the temporary restraining order entered in *Takayoshi v. The Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations Identified on Schedule A Hereto*, Case No. 19-CV-5317 (N.D. Ill. Aug. 29, 2019), Dkt. 42) (hereinafter "*Takayoshi*"). The district court in *Takayoshi* expressed similar concerns as the Court does here. It emphasized that "the asset-restraint order must be limited *only* to the extent that is needed to secure the equitable remedy; the scope of the exception (to the general ban on prejudgment restraint) is limited by the scope of the exception's rationale." [28]-1 at 4. It added that it "remains concerned that relying on an accounting of profits to freeze assets is potentially illusory in that it is much more likely that statutory damages will be pursued and will be the basis for a judgment instead of an accounting of profits." *Id.*

6

at 5.[2] Critically, nothing in *Takayoshi* indicates that the court there was presented with evidence demonstrating that any prejudgment asset restraint would necessarily be overbroad. *Id.* at 5 (contemplating what could transpire "[t]o the extent that the restraint *might be* too broad") (emphasis added).

## CONCLUSION

For these reasons, the Court denies Wham-O's renewed motion for a temporary restraining order [24].

Date: 2/20/25

Georgia N. Alexakis
U.S. District Judge

---

[2] The Court notes that it shares this concern (both in this matter and in other Schedule A matters before it), although that concern is not the basis for its instant decision to deny Wham-O's renewed motion for a temporary restraining order. *See generally Zorro Prods., Inc. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A Hereto*, No. 23-CV-5761, 2023 WL 8807254, at *4 (N.D. Ill. Dec. 20, 2023) (describing a remedy bait-and-switch not uncommon in Schedule A cases).